UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BELL ATLANTIC MOBILE OF MASSACHUSETTS CORPORATION, LTD. d/b/a VERIZON WIRELESS, <br><br>     Plaintiff, <br><br> v. <br><br> CITY OF CAMBRIDGE, MASSACHUSETTS; CITY OF CAMBRIDGE BOARD OF ZONING APPEAL; and CONSTANTINE ALEXANDER, TIMOTHY HUGHES, BRENDAN SULLIVAN, THOMAS SCOTT, JANET O. GREEN, DOUGLAS MYERS, SLATER W. ANDERSON, LINDSEY T. THORNE-BINGHAM, and ANDREA A. HICKEY, as they are the Members and Associate Members of the City of Cambridge Board of Zoning Appeal, <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Civil Action No. 14-CV-10431-FDS |

## FIRST AMENDED COMPLAINT

### Introduction

1.  This is an action for declaratory relief and mandamus brought pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 332 ("TCA").  Plaintiff seeks a declaration that Defendants' denial of Plaintiff's Application for a special permit to allow the installation of a personal wireless services facility, consisting of antennas and related equipment on the roof and within the garage space of a six-story existing hospital building, violates the TCA.  Defendants' unlawful acts entitle Plaintiff to an order of mandamus compelling Defendants to act in accordance with their duties and grant Plaintiff's request for a special permit, among other matters.

## Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise under the laws of the United States, specifically, 47 U.S.C. §332(c)(7), which provides that "anyone adversely affected by any final action or failure to act by local government that is inconsistent with the limitations [of the TCA] may seek review in any court of competent jurisdiction and the court shall hear and decide such action on an expedited basis."

3.      Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in this District and all events or omissions giving rise to this action occurred within this District.

## Parties

4.      Plaintiff Bell Atlantic Mobile of Massachusetts Corporation, Ltd. d/b/a Verizon Wireless ("Verizon Wireless") is a Delaware general partnership with an office at 400 Friberg Parkway, Westborough, Massachusetts, and with a principal place of business at 180 Washington Valley Road, Bedminster, New Jersey.

5.      Defendant City of Cambridge, Massachusetts (the "City" or "Cambridge") is a municipal corporation existing under the laws of the Commonwealth of Massachusetts.

6.      Defendant City of Cambridge Board of Zoning Appeal (the "Board" or "BZA") is an instrumentality of the City of Cambridge that has the authority to issue special permits pursuant to the Zoning Ordinance of the City of Cambridge (the "Ordinance").

7.      Defendant Constantine Alexander ("Alexander"), an individual who resides at 3 Whittier Street, Unit 4, Cambridge, Massachusetts, was, at all times material to this action, a

member of the Board, and is being named in that capacity.  Alexander acted as the chair of the Board during the hearing on Verizon Wireless' application.

8.     Defendant Timothy Hughes ("Hughes"), an individual who resides at 340 Norfolk Street, Cambridge, Massachusetts, was, at all times material to this action, a member of the Board, and is being named in that capacity.

9.     Defendant Brendan Sullivan ("Sullivan"), an individual who resides at 118 Garden Street, Cambridge, Massachusetts, was, at all times material to this action, a member of the Board, and is being named in that capacity.

10.     Defendant Thomas Scott ("Scott"), an individual who resides at 51 Fayette Street, Apartment 3, Cambridge, Massachusetts, was, at all times material to this action, a member of the Board, and is being named in that capacity.

11.     Defendant Janet O. Green ("Green"), an individual who resides at 19 Francis Avenue, Cambridge, Massachusetts, was, at all times material to this action, a member of the Board, and is being named in that capacity.

12.     Defendant Douglas Myers ("Myers"), an individual who resides at 49 Trowbridge Street, Apartment 1, Cambridge, Massachusetts, was, at all times material to this action, an associate member of the Board, and is being named in that capacity.

13.     Defendant Slater W. Anderson ("Anderson"), an individual who resides at 12 Hollis Street, #2, Cambridge, Massachusetts, was, at all times material to this action, an associate member of the Board, and is being named in that capacity.

14.     Defendant Lindsey T. Thorne-Bingham ("Thorne-Bingham"), an individual who resides at 40 Hayes Street, Cambridge, Massachusetts, was, at all times material to this action, an associate member of the Board, and is being named in that capacity.

15.     Defendant Andrea A. Hickey ("Hickey"), an individual who resides at 993 Memorial Drive, Apartment 401, Cambridge, Massachusetts, was, at all times material to this action, an associate member of the Board, and is being named in that capacity.

## Factual Background

16.     Verizon Wireless is a Personal Wireless Service ("PWS") provider, as defined in the TCA, and is licensed by the Federal Communications Commission ("FCC") to provide service to an area that includes the City of Cambridge, Massachusetts (the "License Area").

17.     Verizon Wireless' network functions by exchanging low power signals between the user's wireless device and a Verizon Wireless communications facility at a fixed location known as a PWS facility or a "cell site."  A cell site consists of multiple antennas mounted on a building, tower, or other structure, a climate-controlled room or other enclosure that houses radio and power equipment, and related cabling.

18.     A cellular network like the one operated by Verizon Wireless is an interlinked system consisting of many individual cell sites, each serving a discrete geographic area or "cell." The location of each cell site is selected with consideration for radio frequency ("RF") engineering principles and overall network design so that it will most effectively serve the targeted geographic area and also function properly with respect to existing and planned cell sites in the surrounding area.  In addition to questions of site availability and feasibility, there are a number of technical factors bearing on where to construct a cell site.  These include feasible antenna heights, population and service demands, topographical features, and the site's distance from and location with respect to other existing and proposed cell sites in the network.

19.     Employing RF engineering principles, Verizon Wireless' RF engineers determined that Verizon Wireless requires a cell site in Cambridge in the area along Concord

Avenue, near the border of Cambridge and Belmont, in order to fill a gap in signal coverage. There is currently insufficient signal coverage to allow Verizon Wireless customers to reliably and consistently initiate, receive, or hold calls and data transmissions when located within or traveling through this area of Cambridge and nearby areas of Belmont. This area contains businesses, residences, and heavily traveled local roads.

20.     Verizon Wireless determined that an existing building located at 799 Concord Avenue, Cambridge (the "Property") is the most suitable and feasible available location for a PWS facility to address the area for which coverage is needed. The Property is a six-story brick and masonry structure that steps down to two stories toward the rear of the Property. The Property is currently in use as a hospital facility (Sancta Maria Hospital).

21.     The Property is located in an Office 1 (O-1) base zoning district, and within the Alewife Overlay District (AOD3), Parkway Overlay District, and Concord Avenue Parkway Subdistrict as defined in Article 3.000 of the Zoning Ordinance of the City of Cambridge ("Ordinance") and as shown on the Zoning Map, City of Cambridge, Massachusetts ("Zoning Map"). The area surrounding the Property contains a mix of commercial, institutional and residential uses.

22.     On or about September 6, 2013, Verizon Wireless filed an application with the Board for a special permit under Sections 4.32(g)(1) and Footnote 49 (Section 4.40.49) and Sections 10.40-10.46 of the Ordinance to allow its proposed PWS facility to be located on and within the existing building on the Property (the "Application"). The Verizon Wireless proposed facility would consist of 12 antennas flush mounted on and painted to match the exterior walls of existing rooftop penthouses at the Sancta Maria Hospital building, with associated communications equipment, condensers, and an emergency power generator fully enclosed in an

existing ground level garage.  Cables connecting the communications equipment on the ground

to the antennas on the roof would be routed along the west and north exterior walls and enclosed

within cable trays that would be painted to match the existing building facades.

23.     The proposed PWS facility would be a personal wireless services facility within

the meaning of the TCA and a mobile communications facility within the meaning of Section

4.32.g.1 and accompanying Footnote 49 of the Ordinance.

24.     The siting in Cambridge of telecommunications facilities generally, and PWS

facilities in particular, is governed principally by Section 4.32(g)(1) of the Ordinance.  A

"mobile communications system" may be built in every zoning district except the "Open Space

District," upon the issuance of a special permit by the Board and in accordance with footnote 49

of Section 4.32.(g)(1) of the Ordinance.

25.     Footnote 49 provides the following standards for the Board's review of a special

permit application for mobile communications facilities like the proposed Verizon Wireless

PWS.  Under those standards, the Board was to consider:

> 1. The scope of or limitations imposed by any license secured from any
> state or federal agency having jurisdiction over such matters.
>
> 2. The extent to which the visual impact of the various elements of the
> proposed facility is minimized:
>
>> (1) Through the use of existing mechanical elements on a building's
>> roof or other features of the building as support and background,
>>
>> (2) Through the use of materials that in texture and color blend with the
>> materials to which the facilities are attached, or
>>
>> (3) Other effective means to reduce the visual impact of the facility
>> from off the site.

26.     In addition, Section 10.43 of the Ordinance contains general standards for all

special permits.  These are:

Special permits will normally be granted where specific provisions of this Ordinance are met, except when particulars of the location or use, not generally true of the district or of the uses permitted in it, would cause granting of such permit to be to the detriment of the public interest because:

  (a) It appears that requirements of this Ordinance cannot or will not be met, or

  (b) traffic generated or patterns of access or egress would cause congestion, hazard, or substantial change in established neighborhood character, or

  (c) the continued operation of or the development of adjacent uses as permitted in the Zoning Ordinance would be adversely affected by the nature of the proposed use, or

  (d) nuisance or hazard would be created to the detriment of the health, safety and/or welfare of the occupant of the proposed use or the citizens of the City, or

  (e) for other reasons, the proposed use would impair the integrity of the district or adjoining district, or otherwise derogate from the intent and purpose of this Ordinance, and

  (f) the new use or building construction is inconsistent with the Urban Design Objectives set forth in Section 19.30.

27.     On September 17, 2013, the City of Cambridge Planning Board ("Planning Board") reviewed the Application. Based on that review, the Planning Board forwarded a positive recommendation to the Board, on the condition that the proposed antennas "not break the roofline" of the rooftop penthouses.

28.     In response to the condition in the Planning Board's recommendation, Verizon Wireless revised its design to lower the height of the proposed antennas on the walls of the existing rooftop penthouses so that these antennas would not extend above the edge of the penthouse roof. On October 7, 2013, Verizon Wireless filed with the Board revised site plans and photo-simulations depicting the revised design in accordance with the condition in the Planning Board recommendation.

7

29.     On October 10, 2013, the Board opened a public hearing to consider the

Application.  The hearing was continued to and closed on December 5, 2013 (the "Hearing").  At

the Hearing, Verizon Wireless, through reference to its Application and additional testimony and

supplemental information, demonstrated that the proposed PWS facility satisfied the applicable

standards in Footnote 49, and also that it met the general standards for special permits under

Section 10.43 of the Ordinance, and should be approved.  Among other things, Verizon Wireless

established that the proposed PWS facility would be designed and colored to blend in with the

appearance of the existing structure and presented photographic representations of the proposed

facility to demonstrate its lack of visual impact. Verizon Wireless also presented an appraisal

report prepared by a Massachusetts Certified General Appraiser that concluded that the

installation of the proposed PWS facility would have no impact on the property values of

adjacent and nearby properties.  In addition, Verizon Wireless also submitted a report and

testimony from a radio safety specialist to demonstrate that the proposed PWS facility would

comply with all applicable regulatory guidelines for RF exposure to the public.

30.     At the Hearing, the Board also heard extensive input from various members of the

public.  Much of the commentary by members of the public at both sessions of the Hearing

concerned fears that the proposed PWS Facility would have negative health effects on people

living, working, and attending child care and educational facilities near the Property, and

unsupported allegations that those health effect fears would affect the value of nearby properties.

For example, a representative from the Evergreen Day School, a preschool located at 79 Concord

Avenue, testified at the Hearing that parents were concerned about having antennas installed on

the Property, and that this could have an adverse effect on enrollment.  The director of the

Lydian Center for Innovative Medicine, located at 777 Concord Avenue, also testified that

parents were coming to her expressing health concerns about having the proposed cell site next door.

31.     At the Hearing, the Chair of the Board also read into the record letters to the Board from members of the public concerning health effects that would ostensibly be caused by the facility, including claims that it would cause cancer and cardiovascular disruption among those living at a nearby senior center.  A parent of a child at the Evergreen Day School also submitted correspondence stating that she, as a "developmental psychologist," was aware of concerns about signals from "cellphone towers" posing harm to young children.  The President of the Board of Directors of Friends of Alewife Reservation, Inc. submitted a letter "vehemently" opposing the Verizon Wireless facility because it would allegedly cause ecological impact to wildlife at the Alewife Reservation.

32.     After closing the Hearing on December 5th, the Chair moved to approve Verizon Wireless' Application, subject to a condition that the term of the special permit only be for one year.  This condition was proposed because of concerns about the RF emissions from the facility and a desire to re-evaluate this issue after one year's time. The Chair recognized that Verizon Wireless had taken steps to camouflage the visual impact of the proposed antennas and related equipment on the cell site.  He also acknowledged that the traffic generated or patterns of access resulting from the cell site would not cause congestion, hazard, or substantial change in the established neighborhood character.  He stated that the continued operation of adjacent uses would not be affected and that no nuisance or hazard would be created to the detriment of the health, safety, and/or welfare of the occupants or the citizens of the City.  The Chair further proposed the finding that the proposed PWS facility would not impair the integrity of the district or adjoining district or otherwise derogate from the intent and purpose of the Ordinance.

33.     Despite the Chair's findings and recommendations, on the motion to approve the Application, the five voting members of the Board voted two in favor and three opposed, meaning that the motion failed and the Application was denied.

34.     On January 29, 2014, the Board issued its written decision denying Verizon Wireless' Application (the "Decision").  A true, accurate, and certified copy of the Decision is attached as Exhibit 1 to this Complaint.  The Decision was filed with the City Clerk on January 29, 2014.

35.     As justification for denying the Application, the Decision merely repeated the general special permit standards from Section 10.43 of the Ordinance and concluded, without analysis or justification, that the Application had failed to meet those standards.  There was no indication in the Decision of the grounds on which the Board had concluded that any of these standards were not satisfied.

36.     Under the TCA, any decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by *substantial evidence contained in a written record.*  (Emphasis added).  The Board's Decision is not supported by substantial evidence in the written record.  The Decision ignores the overwhelming weight of the competent and legally cognizable evidence submitted at the Hearing.  Among other shortcomings, the Decision wholly fails to acknowledge the evidence provided by Verizon Wireless to demonstrate its satisfaction of the special permit standards set forth in the Ordinance.

37.     Verizon Wireless is a personal wireless service provider as described in the TCA, is licensed by the FCC, and is therefore entitled to the protections of the TCA.  The Application

for a special permit pursuant to the Ordinance constitutes a request to construct a PWS facility,

and is subject to the TCA.

## COUNT I
### (Violation of TCA Because Denial Not Supported by Substantial Evidence)

38.     Plaintiff's allegations contained in paragraphs 1 through 37 above are

incorporated by reference as if fully set forth herein.

39.     The TCA requires that decisions to deny a request to "place, construct or modify"

a personal wireless services facility, such as the one proposed by Verizon Wireless, must "be

supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).

40.     There is not substantial evidence in the written record to support the Board's

denial of the Application presented at the Hearing or in the record before the Board.

41.     The Board's failure to support its Decision by "substantial evidence contained in a

written record" constitutes a violation of 47 U.S.C. §332 (c)(7)(B).

42.     The TCA vests this Court with authority to grant mandamus relief if such relief

would be warranted under the circumstances.

43.     In light of the foregoing, Verizon Wireless is entitled to a declaration that the

Board's failure to base its Decision to deny the Application on substantial evidence in a written

record violates the TCA.  Verizon Wireless is also entitled to an order of mandamus directing the

Board to approve the Application.

## COUNT II
### (Violation of TCA for Regulating on the Basis of
### Environmental Effects of Radio-Frequency Emissions)

44.     Plaintiff's allegations contained in paragraphs 1 through 43 above are

incorporated by reference as if fully set forth herein.

45.     The TCA, specifically § 332(c)(7)(B)(iv), states that "[n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

46.     Verizon Wireless provided evidence that the proposed PWS facility complies with the FCC's regulations concerning such emissions.  Such evidence was not refuted by any evidence presented by the Board or by members of the public.

47.     Despite the unrefuted evidence that PWS facility complies with the FCC's regulations, the Board considered unsubstantiated comments from the public concerning alleged negative environmental effects of radio frequency emissions in denying the Application.

48.     In light of the foregoing, Verizon Wireless is entitled to a declaration that the Board's denial of its Application violates the TCA, and is further entitled to an order of mandamus directing the Board to grant the special permit.

**WHEREFORE**, Plaintiff Bell Atlantic Mobile of Massachusetts Corporation, Ltd. d/b/a Verizon Wireless respectfully requests the following relief:

1.     An expedited review of the matters set forth in this Complaint, as provided by the Telecommunications Act of 1996, Pub. L. 104-104, § 704, 110 Stat. 56, codified at 47 U.S.C. § 332(c);

2.     A declaration that the Board's denial of the Application violated the Telecommunications Act of 1996, 47 U.S.C. § 332(c);

3.     An order annulling the Board's Decision denying the Application;

4.       An order of mandamus directing the City to grant a special permit and any and all necessary zoning approvals and relief allowing Verizon Wireless to construct a PWS facility at the Property;

5.       Award Verizon Wireless its reasonable attorneys' fees and costs incurred in this action; and

6.       Such further relief as the Court may deem appropriate and proper.

**PLAINTIFF,**
**BELL ATLANTIC MOBILE OF**
**MASSACHUSETTS CORPORATION,**
**LTD.  d/b/a VERIZON WIRELESS,**
By its Attorneys,


  /s/ Danielle Andrews Long
Michael S. Giaimo (BBO #552545)
mgiaimo@rc.com
Danielle Andrews Long (BBO #646981)
dlong@rc.com
Robinson & Cole LLP
One Boston Place, Floor 25
Boston, MA 02108-4404
(617) 557-5900

Dated:  May 2, 2014

## CERTIFICATE OF SERVICE

I, Danielle Andrews Long, hereby certify that a copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those, if any, indicated as non-registered participants on this 2nd day of May, 2014.

/s/ Danielle Andrews Long
Danielle Andrews Long

13